IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

MARIO MORENO-LOZANO,

   Petitioner,

       v.

UNITED STATES OF AMERICA,

   Respondent.

CIVIL NO. 25-1530 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is Petitioner Mario Moreno-Lozano's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Docket No. 1. For the following reasons, the Motion is hereby **DENIED**.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may petition to vacate, set aside, or correct his sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." However, "[r]elief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted); s*ee Knight v. United States*, 37 F.3d 769, 772-73 (1st Cir. 1994).

CIVIL NO. 25-1530 (JAG)                                                                  2

A motion under § 2255 is not a substitute for a direct appeal. *Foster v. Chatman*, 578 U.S. 488, 519 (2016). Therefore, "as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." *Id.* (citations omitted). Moreover, "[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on [direct] appeal." *Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) (cleaned up). If a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's review unless "the petitioner can show both (1) 'cause' for having procedurally defaulted his claim; and (2) 'actual prejudice' resulting from the alleged error." *Id.*; *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

In this case, Petitioner procedurally defaulted on his claims by failing to raise these arguments on appeal. He has shown cause for the default: his counsel's failure to file an appeal despite Petitioner's request to do so. However, as the Court will discuss, because Petitioner's claims do not entitle him to relief under § 2255, he has not shown actual prejudice.

## ANALYSIS

In his § 2255 Motion, Petitioner asserts three grounds for relief:

> (1) ineffective assistance for counsel's failure to investigate and competently litigate his entitlement to credit for approximately seventy-two (72) months of Venezuelan detention (May 2, 2014 – March 2019) attributable to this case; (2) the sentencing court's legal error in refusing to recognize that Venezuelan detention as "official detention" within the meaning of 18 U.S.C. § 3585(b) and as a basis for adjustment under U.S.S.G. § 5G1.3(b); and (3) ineffective assistance for counsel's failure to file a notice of appeal after Petitioner expressly instructed him to do so.

Docket Nos. 24 at 1; 1 at 1-2. The Court shall address each argument below.

CIVIL NO. 25-1530 (JAG)                                                                      3

I.    **Foreign Detention Credit under 18 U.S.C. § 3585(b)**

Petitioner contends that this Court erred in finding that his time in detention in Venezuela

was not creditable under 18 U.S.C. § 3585(b). Docket No. 1 at 27-37. The Court disagrees.

The statute provides

> (b) A defendant shall be given credit toward the service of a term of
> imprisonment for any time he has spent in official detention prior
> to the date the sentence commences (1) as a result of the offense for
> which the sentence was imposed; or (2) as a result of any other
> charge for which the defendant was arrested after the commission
> of the offense for which the sentence was imposed; that has not
> been credited against another sentence.

18 U.S.C. § 3585(b). Prior to sentencing, Defense counsel requested relief under § 3585(b)(1),

arguing that Defendant's incarceration in Venezuela was directly related to the INTERPOL Red

Notice. Crim. No. 13-380, Docket No. 706 at 7.[1] The Court found that his detention in Venezuela

was not related or prompted by the Red Alert and, thus, he was not in detention *as a result of* the

offense for which the sentence was imposed. Crim. No. 13-380, Docket No. 691. The evidence

submitted in this case further supports that conclusion.

Petitioner claims that

> In direct response to this Red Notice, the Republic of Venezuela
> took Mr. Moreno-Lozano into custody and incarcerated him solely
> because of the U.S. request for his arrest . . . he remained in
> Venezuelan prisons for approximately six years (May 2014–2019)
> without any Venezuelan charges or judicial process, awaiting the
> U.S. to formalize an extradition request. The Criminal Chamber of

---

[1] *See also* Crim. No. 13-380, Docket No. 683 at 2 ("The truth of the matter is that the only reason the Defendant was imprisoned in Venezuela for approximately 90 months was because, while detained, on May 9th, 2014, the United States National Center Bureau of INTERPOL (USNBC INTERPOL) issued a Red Alert, control number A-3538/5-2014, to all countries regarding the United States Government's warrant for his arrest issued on July 3rd, 2013. It was because of this Red Notice Alert that the Republic of Venezuela proceeded to incarcerate the Defendant.") (cleaned up); Crim. No. 13-380, Docket No. 686 at 2 ("The Red Alert prompted the Republic of Venezuela to detain Moreno in Venezuela."); Crim. No. 13-380, Docket No. 706 at 2 (same).

**CIVIL NO.** 25-1530 (JAG)                                                                4

> the Venezuelan Supreme Court eventually documented that Mr. Moreno-Lozano "was detained for six (6) years in Venezuelan jails waiting for the Government of the United States of America to legalize the extradition request, without any process whatsoever". In other words, Petitioner's prolonged detention in Venezuela was exclusively at the behest of the U.S. and in connection with the instant offense – he remained jailed "under the orders of the American government" pending extradition.

Docket No. 1 at 3-4. However, upon review of the document cited, it is clear this statement is misleading because this is merely a summary of Petitioner's arguments before the courts of Venezuela and Colombia, not factual findings by a court of law.[2] This statement is also factually unsubstantiated. The evidence submitted shows that it was not until May 22, 2019, five years after his incarceration, that Venezuela informed the United States of the two-month deadline to present a formal request for extradition. Docket No. 1-2 at 1. Therefore, this does not support

---

[2] Specifically, the Report of Judge Juan Luis Ibarra of the Supreme Court of Justice of the Republic of Venezuela dated October 16, 2019, states:

> That the aforementioned appeal is based on the following *arguments*:

> The *appellant states* that citizen MARIO MORENO LOZANO was captured as stated in the contested resolution, but that this capture was because the police of the Bolivarian Republic of Venezuela handed him over at the Colombian border. *He specifies* that this situation was due to the fact that the requested citizen was detained for six (6) years in Venezuelan jails waiting for the Government of the United States of America to legalize the extradition request, without any process whatsoever.

> [. . .]

> Under this understanding, *the appellant requests* that Executive Resolution No. 313 of October 13, 2023[,] be revoked and that the government of the United States of America be required to certify the time that Mr. MORENO LOZANO remained detained in the Bolivarian Republic of Venezuela (from 2014 to 2019) under the orders of the United States of America.

Docket No. 1-2 at 18 (emphasis added).

CIVIL NO. 25-1530 (JAG)                                                                      5

Petitioner's claim that he was detained for six years *under the orders of the United States* government

waiting for extradition.

Petitioner also claims that "Colombian records confirm [that] Mr. Moreno-Lozano was

delivered to Colombia because he 'remained detained for 6 years in Venezuelan prisons waiting

for his extradition to the U.S., to no avail.'" Docket No. 1 at 5 (cleaned up). He cites Executive

Resolution No. 417 issued by the Ministry of Justice and Law of the Republic of Colombia. Crim.

No. 13-380, Docket No. 683-2. But, once again, the language cited is not a judicial finding, but

merely a summary of Petitioner's arguments.[3] Instead, Executive Resolution No. 417 explicitly

states

> [I]t must be specified that it is not feasible to require the Bolivarian
> Republic of Venezuela to certify the time that this citizen remained

---

[3] Executive Resolution No. 417 states that the appeal was based on the following *arguments*:

> The *appellant states* that citizen MARIO MORENO LOZANO was
> captured as stated in the contested resolution, but that this capture was
> because the police of the Bolivarian Republic of Venezuela handed him
> over at the Colombian border. *He specifies* that this situation was due to the
> fact that the requested citizen was detained for six (6) years in
> Venezuelan jails waiting for the Government of the United States of
> America to legalize the extradition request, without any process
> whatsoever.
>
> [. . .]
>
> Under this understanding, the *appellant requests* that Executive Resolution
> No. 313 of October 13, 2023 be revoked and that the government of the
> United States of America be required to certify the time that Mr.
> MORENO LOZANO remained detained in the Bolivarian Republic 1of
> Venezuela (from 2014 to 2019) under the orders of the United States of
> America . . . In addition to the foregoing, *the appellant requests* that the
> Government of the Bolivarian Republic of Venezuela be requested to
> certify the time that this citizen was detained in the 'SEBIN' on account
> of the 1extradition request made by the Government of the United States
> of America.

Docket No. 683-2 at 2-3 (emphasis added).

CIVIL NO. 25-1530 (JAG)                                                        6

> detained in that country on account of the extradition request made by the Government of the United States of America. This is by reason that such aspect is alien to the extradition procedure being carried out in Colombia, and if the intention is to enforce a right in the country that requires it, nothing prevents the requested citizen or his defense counsel to enforce it within the process being carried out in the United States of America.

*Id.* at 5. Therefore, Colombian records do not confirm that Petitioner's detention in Venezuela was a result of the INTERPOL Red Notice related to his criminal charges in this District.

Petitioner also claims that "Venezuelan authorities openly acknowledged they jailed Mr. Moreno Lozano 'by virtue of [the] Red Notice . . . issued on May 9, 2014 . . . for the crimes of . . . import[ing] . . . cocaine into the United States.'" Docket No. 1 at 28. However, the document cited, the Report of Judge Juan Luis Ibarra of the Supreme Court of Justice of the Republic of Venezuela dated October 16, 2019, also states that Petitioner "had been apprehended on May 2, 2014 . . . This apprehension *derived from the fact* that [Petitioner] was executing various illicit activities . . . [Petitioner] was illegally present" in Venezuela and "made attempts to obtain an electronic passport on May 2, 2014." Docket No. 1-2 at 2-3 (cleaned up) (emphasis added).

More importantly, the Report states:

> [I]t was confirmed that *on February 4, 2019*, the aforementioned Administrative Service for Identification, Migration and Alien Affairs (SAIME) of the People's Ministry for Internal Relations, Justice and Peace issued official letter No. 000047-2019 addressed to the International Police Direction (INTERPOL) of the Scientific, Criminal and Forensic Investigation Corps by which it requested assistance regarding verification with international search system I-24/7 (sic) of any possible notifications at international level or judicial requests involving citizen MARIO MORENO LOZANO, of Colombian nationality, date of birth 15-10-1967, citizenship card CC79002418 . . . Information received from said organ stated that "the above-mentioned Colombian citizen appears registered in the system with Red Alert No. A-3538/5-2014, being required by the United States (sic) since 09-05-2014 for the crime of illicit

**CIVIL NO.** 25-1530 (JAG)                                                                  7

> association intended to import to the United States (sic) [. .. ] a
> narcotic and psychotropic substance (cocaine).
>
> [. . .]
>
> Consequently, *on April 12, 2019*, the Head of the Interpol
> Investigations Division of the Scientific, Criminal and Forensic
> Investigation Corps forwarded to [] the Ministry of People's Power
> for Internal Relations, Justice and Peace, the Red Notice bearing
> No. A-3538/5-2014, issued by the authorities of the Government of
> the United States of America, published on May 9, 2014, against
> citizen Mario Moreno Lozano.

*Id.* at 3-4 (cleaned up) (emphasis added). Thus, it appears that the Venezuelan government did

not even inquire whether INTERPOL had issued a Red Notice against Petitioner until April 2019.

Then, on May 7, 2019, the Venezuelan government sent Petitioner's fingerprints to INTERPOL

to "request[] the matching with the fingerprints . . . associated with Red Notice No. A3538/5-

2014, dated 09-05-2014 . . . to determine whether the citizen in question, who is in these facilities

under humanitarian protection, corresponds and is the person required by the international

system (INTERPOL)." *Id.* at 6. On May 9, 2019, INTERPOL confirmed "that the fingerprints

shown in the R-9 card correspond to citizen ALEXIS ANTONIO RODRIGUEZ RODRIGUEZ,

evidencing that the person who is being held in the humanitarian protection area of this office,

identified as MARIO MORENO LOZANO is the same person." *Id.* at 7. Therefore, it was not until

May 9, 2019, that Venezuelan authorities learned that Petitioner was indeed the target of an

INTERPOL Red Notice. And it was not until May 22, 2019, that Venezuela informed the United

States of the two-month deadline to present a formal request for extradition. Docket No. 1-2 at

1. This fully supports the Court's previous holding that his confinement in Venezuela was

unrelated to the Red Notice and, thus, unrelated to Petitioner's criminal case. *See* Crim. No. 13-

CIVIL NO. 25-1530 (JAG)                                                                    8

380, Docket No. 691. As such, the Court did not err in finding that Petitioner is not entitled to jail time credit under § 3585(b)(1).

Petitioner now also argues that the Court erred for not awarding credit under § 3585(b)(2) because he was arrested after the commission of the offense for which the sentence was imposed and this time has not been credited against another sentence. However, the Supreme Court has stated

> Section 3585(b) indicates that a defendant may receive credit against a sentence that "was imposed." It also specifies that the amount of the credit depends on the time that the defendant "has spent" in official detention "prior to the date the sentence commences." Congress' use of a verb tense is significant in construing statutes. By using these verbs in the past and present perfect tenses, Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing.
>
> [. . .]
>
> Because § 3585(b) bases the credit on how much time a defendant "has spent" (not "will have spent") prior to beginning his sentence, the District Court could not compute the amount of the credit at sentencing.

*United States v. Wilson*, 503 U.S. 329, 333 (1992) (citations omitted); *see also United States v. White*, 91 F. App'x 162, 163 (1st Cir. 2004) ("It is settled law that under 18 U.S.C. § 3585(b), discretion to credit time served is vested in the Attorney General, through the Bureau of Prisons ("BOP"), and not in the sentencing court."). Therefore, because the Court did not have authority to apply § 3585(b) at sentencing, the Court did not err.

## II.    Ineffective Assistance of Counsel

To warrant § 2255 relief, ineffective assistance of counsel claims require a showing that (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the

CIVIL NO. 25-1530 (JAG)                                                                                  9

defense . . . [so] as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687

(1984). In other words, a petitioner must show that "counsel's representation fell below an

objective standard of reasonableness," *id.* at 688; and "that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different,"

*id.* at 694.

Failure to satisfy one of the *Strickland* prongs is fatal; therefore, the Court is free to tackle

either prong first. *United States v. Caparotta*, 676 F.3d 213, 219-20 (1st Cir. 2012); *Tevlin v. Spencer*, 621

F.3d 59, 66 (1st Cir. 2010). The proper standard for judging an attorney's performance is that of

reasonably effective assistance, considering the totality of the circumstances. *Strickland*, 466 U.S.

at 687-88. "The benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result." *Id.* at 686. This analysis "requires that every effort be

made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Importantly, our precedent imposes "a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance." *Id.* As such, "[j]udicial scrutiny of counsel's

performance must be highly deferential," *id.*; "[s]urmounting *Strickland*'s high bar is never an easy

task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted).

Here, Petitioner's claims fail because neither the record nor the applicable jurisprudence

supports a finding that counsel's choices were "so patently unreasonable that no competent

attorney would have made [them]." *United States v. Rodriguez*, 675 F.3d 48, 56 (1st Cir. 2012)

(citation omitted).

CIVIL NO. 25-1530 (JAG)                                                                10

A. **Venezuela Detention Credit**

Petitioner contends that he was denied effective assistance of counsel because his attorney "failed to properly investigate and argue his entitlement to credit under 18 U.S.C. § 3585(b)." Docket No. 1 at 1-2, 15-27. The Court disagrees. As discussed above, *supra* I, the Court did not have authority to apply § 3585(b) at sentencing and, thus, his counsel could not have rendered ineffective assistance as to this issue.

It must also be noted that the Court decided this issue before Petitioner signed the plea agreement.[4] As such, Petitioner was aware that the Court would not grant jail time credit under § 3585(b)(1) for his time in detention in Venezuela before deciding to plead guilty. And during the change of plea hearing, Petitioner attested that he read and discussed the plea agreement with his attorney, understood the proceedings, understood the terms of the plea agreement, was satisfied with his counsel, and decided to plead guilty voluntarily. Crim. No. 13-380, Docket No. 721 at 4, 5, 9, 11, 14-16, 18-19; *see also United States v. Jimenez*, 512 F.3d 1, 3-4 (1st Cir. 2007) ("A defendant's acknowledgement, during a change-of-plea proceeding, that he understands a lucid explanation of his potential sentencing exposure is powerful evidence of the knowing nature of his guilty plea."). And at no point has Petitioner argued that his plea was not voluntary, intelligent, and knowing. Nor has Petitioner shown prejudice because he has not alleged that he would not have pled guilty but for counsel's conduct.

---

[4] The Court held that Petitioner was not entitled to credit for his detention in Venezuela on September 11, 2024. Crim. No. 13-380, Docket No. 691. Petitioner signed the plea agreement on November 12, 2024. Crim. No. 13-380, Docket No. 699.

CIVIL NO. 25-1530 (JAG)                                                                    11

### B.  Counsel's Failure to Appeal

Petitioner's claim that his counsel was ineffective for failing to file a notice of appeal likewise fails. Despite the waiver clause in the Plea Agreement, Petitioner instructed his trial counsel to appeal the Court's decision about his entitlement to credit under 18 U.S.C. § 3585(b). However, as previously stated, Petitioner had notice that the Court would not grant credit for his time in detention in Venezuela before knowingly and voluntarily pleading guilty. And Petitioner does not challenge the validity of his guilty plea. At the Change of Plea Hearing, the Court personally advised Defendant as to, *inter alia*, the purpose of the hearing, the constitutional rights he was waiving by pleading guilty, the consequences of pleading guilty, and the maximum penalties of the offense. Crim. No. 13-380, Docket No. 721 at 3, 5-6, 10-12, 14-15. Defendant testified that he understood the proceedings, understood the terms of the plea agreement, was satisfied with his counsel, and decided to plead guilty voluntarily. *Id*. at 4, 5, 9, 11, 14-16, 18-19; *see Jimenez*, 512 F.3d at 3-4.

Therefore, counsel's failure to appeal cannot constitute ineffective assistance of counsel because such an appeal would have been meritless. *United States v. Pacheco*, 921 F.3d 1, 2 (1st Cir. 2019) ("A waiver of appellate rights is enforceable provided that, among other things, the defendant enter[ed] into the waiver knowingly and voluntarily.") (cleaned up); *see also Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990) (stating that attorneys are "under no obligation to raise meritless claims [and] [f]ailure to do so does not constitute ineffective assistance of counsel."). The Court simply cannot find that counsel's choices were "so patently unreasonable that no competent attorney would have made [them]." *United States v. Rodriguez*, 675 F.3d 48, 56 (1st Cir. 2012) (citation omitted).

CIVIL NO. 25-1530 (JAG)                                                                                    12

### III.    Proper Avenue for Relief

Finally, the Court notes that "[a] petition for habeas relief under 28 U.S.C. § 2241 is the proper vehicle for a prisoner to challenge the manner, location, or execution of his sentence, including challenges to the calculation of . . . sentencing credits under the FSA." *Miles v. Bowers*, 173 F.4th 372, 374 (1st Cir. 2026) (cleaned up). Thus, this case should have been filed pursuant to § 2241. Moreover, because "discretion to credit time served is vested in the Attorney General, through the Bureau of Prisons ("BOP"), and not in the sentencing court." *White*, 91 F. App'x at 163 (cleaned up), Petitioner must first exhaust administrative remedies before seeking judicial review under § 2241 in the district court with jurisdiction over Petitioner's custodian, i.e. the district of confinement.[5] *Rumsfeld v. Padilla*, 542 U.S. 426, 434, 443 (2004); *see id.* at 435 ("[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.") (citations omitted); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001) ("[F]ederal prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief.") (citations omitted). Petitioner may raise the issue of entitlement to credit under § 3585(b)(1) and (b)(2) during the administrative remedies process considering the authority to issue such credits rests with the Attorney General, not the sentencing court. *See Hughes v. Slade*, 347 F. Supp. 2d 821, 829-30 (C.D. Cal. 2004).

---

[5] According to the Bureau of Prison's Inmate Locator, Petitioner is currently incarcerated in Yazoo City Low FCI in Yazoo, Mississippi.

**CIVIL NO.** 25-1530 (JAG)                                                              13

## CONCLUSION

In view of the foregoing, Petitioner's Motion is **DENIED**. Judgment shall be entered accordingly.

## CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued in the event that Petitioner files a notice of appeal, because there is no substantial showing of a denial of a constitutional right under 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Tuesday, August 11, 2026.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge